FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

JESSICA F.,

            Plaintiff,

    vs.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

No. 1:17-cv-03160-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 23, 2014, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of April 1, 2010.  Tr. 196-210.  The applications were denied initially, Tr. 124-31, and on reconsideration, Tr. 132-42.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 11, 2016.  Tr. 43-69.  On March 30, 2016, the ALJ denied Plaintiff's claim.  Tr. 20-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 1, 2010.  Tr. 22.  At step two, the ALJ found that Plaintiff has the following severe impairments:  obesity;

asthma; depressive disorder, not otherwise specified; cannabis dependence; and personality disorder, not otherwise specified with borderline, antisocial, and paranoid features. Tr. 22.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> The [Plaintiff] can never climb ladders, ropes, or scaffolds; is limited to occasional exposure to extreme heat and humidity; is limited to occasional exposure to pulmonary irritants, such as dust, fumes, odors, gases, and poor ventilation; is limited to occasional exposure to hazardous conditions such as proximity to unprotected heights and moving machinery; is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes; is limited to occasional and superficial interaction with both the public and co-workers; and is not well suited to employment in a highly interactive or interdependent work group, and should work in isolation from others with objects, rather than people.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 31. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as, housekeeper/cleaner, electronics worker, and small products assembler. Tr. 32. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from the alleged onset date of April 1, 2010, through the date of the decision.  Tr. 20, 33.

On July 20, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 15 at 2, 4-20.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of Mark Duris, Ph.D., Aaron Burdge, Ph.D., and therapist Derrick Conley, MSW, and the

omission of the assessment completed by Carol Gilliom, LICSW.  ECF No. 15 at 4-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81

F.3d 821, 830-831 (9th Cir. 1995)).

Medical sources are divided into two categories: "acceptable" and "not

acceptable." 20 C.F.R. § 416.902. Under the Social Security regulations in effect

at the time of the ALJ's decision, mental health therapists and social workers were

considered an "other source" and not an "acceptable medical source."[1]  20 C.F.R.

§§ 404.1513(a), (d), 416.913(a), (d) (2013). Opinions of "other sources" are not

entitled to the same deference as acceptable medical sources, such as physicians

and psychologists. 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967,

970-71 (9th Cir. 1996); *Molina*, 674 F.3d at 1111. Non-medical testimony can

never establish a diagnosis or disability absent corroborating competent medical

_____

[1] The Court generally applies the law in effect at the time of the ALJ's decision.

*See Garrett ex. rel. Moore v. Barnhart*, 366 F.3d 643, 647 (9th Cir. 2004). Revised

versions of these regulations took effect on March 27, 2017, and apply to disability

claims filed on or after that date. *See* 82 Fed. Reg. 5844 (Mar. 27, 2017); 20

C.F.R. § 416.920c. Because Plaintiff filed her claims in 2014, the revised

regulations do not apply.

ORDER - 10

evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ may discount opinions from "other sources" if the ALJ gives "germane reasons" for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### 1. Dr. Duris

Psychologist Dr. Duris conducted psychological evaluations of Plaintiff in July 2013 and December 2013. Tr. 333-43. In July 2013, Dr. Duris diagnosed Plaintiff with intermittent explosive disorder, panic disorder with agoraphobia, major depressive disorder, cannabis abuse, methamphetamine dependence in remission, and borderline personality disorder. Tr. 340. In December 2013, one day after Plaintiff attempted suicide, Dr. Duris conducted another psychological evaluation of Plaintiff. Tr. 333-37. Dr. Duris diagnosed Plaintiff with recurrent major depressive disorder (severe without psychotic features), cannabis abuse, methamphetamine dependence in remission, and borderline personality disorder. Tr. 334. Following each of these examinations, Dr. Duris assessed the following limitations:

| Basic Work Activity | July 2013 | Dec. 2013 |
|---|---|---|
| Understand, remember, and persist in tasks by following very short and simple instructions | None/Mild | Moderate |
| Understand, remember, and persist in tasks by following detailed instructions | Moderate | Marked |
| Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision | Severe | Severe |
| Learn new tasks | None/Mild | Moderate |
| Perform routine tasks without special supervision | Moderate | Severe |
| Adapt to changes in a routine work setting | Marked | Severe |
| Make simple work-related decisions | Moderate | Severe |
| Be aware of normal hazards and take appropriate precautions | None/Mild | Moderate |
| Ask simple questions or request assistance | Moderate | Severe |
| Communicate and perform effectively in a work setting | Marked | Severe |
| Complete a normal word day and work week without interruptions from psychologically based symptoms | Marked | Severe |
| Maintain appropriate behavior in a work setting | Marked | Severe |
| Set realistic goals and plan independently | Moderate | Severe |

Tr. 335, 341.

Also in July 2013, Dr. Duris opined that Plaintiff's limitations would last six months. Tr. 341-42. In December 2013, Dr. Duris opined that Plaintiff's limitations would last more than twelve months. Tr. 334-35.

ORDER - 12

The ALJ assigned little weight to Dr. Duris' opinions. Tr. 30. Because Dr. Duris' opinions were contradicted by the opinions of Aaron Burdge, Ph.D., Tr. 292-95, and the State-agency medical consultants, Bruce Eather, Ph.D., Tr. 70-93, and James Bailey, Ph.D., Tr. 98-123, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Duris' opinions. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Duris' opinions because they were less thorough and objective than those of Dr. Burdge, to whose opinion the ALJ assigned great weight. Tr. 30. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen*, 100 F.3d at 1464. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 416.927(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record").

After comparing Dr. Duris' evaluations and opinions with Dr. Burdge's evaluation and opinion, and considering the entire record, the Court concludes the

ALJ's weighing of these two doctors' opinions is supported by substantial

evidence. As to Dr. Burdge, he reviewed the psychological/psychiatric evaluation

reports prepared by James Goodwin, Psy.D., on August 1, 2006, and November 28,

2006, and a Personality Assessment Inventory prepared by Leslie Morey, Ph.D. on

September 12, 2012. Tr. 292-93 (citing Tr. 296-310). Dr. Burdge also interviewed

the Plaintiff, conducted Trail Making Tests A and B, and performed HAM-D and

HAM-A assessments.

Dr. Duris also reviewed Dr. Morey's Personality Assessment Inventory.[2]

Tr. 333, 338 (citing the September 18, 2012 DSHS Psychological Evaluation). It is

unclear whether the ALJ recognized that Dr. Duris considered the Personality

Inventory Assessment completed by Dr. Morley given the ALJ's comment that the

medical sources who offered opinions, other than Dr. Burdge, "did not incorporate

the results of personality testing." Tr. 29. Regardless, Dr. Duris did not conduct

Trail Makings Tests or perform HAM-D and HAM-A assessments. Therefore, he

largely relied on Plaintiff's self-reports. The ALJ's finding that Dr. Duris'

opinions were less objective and thorough than Dr. Burdge's opinion is supported

_____

[2] Given the reference to the correctly dated Personality Assessment Inventory, it

appears that Dr. Duris mistakenly referred to "Ms. Cassell" in his report when

discussing Plaintiff's Personality Assessment Inventory. Tr. 334.

ORDER - 14

by substantial evidence.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  When resolving conflicts in the medical evidence, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  This was a specific and legitimate reason to credit Dr. Burdge's opinion over Dr. Duris' opinion.

Second, the ALJ discounted Dr. Duris' opinions because Dr. Duris failed to explain the basis for the significant change in his findings during the two examinations.  Tr. 30.  "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Bray*, 554 at 1228; *Holohan*, 246 F.3d at 1202 (recognizing that the social security regulations "give more weight to opinions that are explained than to those that are not").  As set forth in the chart above, there was a significant change in Dr. Duris' opinions.  In July 2013, Dr. Duris opined that Plaintiff was either markedly or moderately limited in most work-activity categories.  Whereas, in December 2013, Dr. Duris opined that Plaintiff was severely limited in the majority of work-activity categories.  Tr. 335, 341.

While Dr. Duris' December 2013 opinion must be interpreted in its context (based on an evaluation conducted the day following Plaintiff's suicide attempt),

ORDER - 15

Dr. Duris' December 2013 report still fails to explain the significant change in the opined work-activity limitations. Contrary to the opined severe limitations, Dr. Duris noted that Plaintiff had no significant psychological-history changes since July 2013, she was able to maintain all of her daily-living activities, she had a history of significantly over-reporting her symptoms, and her thought process, orientation, perception, memory, concentration, abstract thought, insight, and judgment were all within normal limits. Tr. 333-37. These observations do not supported the opined severe, marked, and moderate limitations. Plus, the mental status examinations purporting to support these two opinions are largely consistent and reflect normal moods, affects, and thought processes. Tr. 336-37; Tr. 342-43. This was another specific and legitimate reason supported by substantial evidence to discount Dr. Duris' medical opinions.

### 2. Dr. Burdge

As previously mentioned, the ALJ assigned greater weight to the opinion of examining psychologist Dr. Burdge. Tr. 29. Dr. Burdge evaluated Plaintiff in September 2012. He diagnosed Plaintiff with alcohol dependence, cannabis dependence, depressive disorder, and personality disorder with borderline, antisocial, and paranoid features. Tr. 294. Dr. Burdge opined that Plaintiff was moderately limited in the following activities: perform activities within a schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting. Tr. 294-95. Dr. Burdge opined that Plaintiff was otherwise mildly limited in the other work-activity categories. *Id.* Dr. Burdge opined that Plaintiff's impairments would last up to nine months with treatment and recommended cognitive-behavioral therapy (CBT), dialectical behavioral therapy (DBT), job-seeking assistance, job training, and a narcotics support group. Tr. 295.

Plaintiff submits that, if the ALJ truly gave great weight to Dr. Burdge's opinion, than the ALJ failed to fully consider the moderate limitations opined by Dr. Burdge in formulating the RFC. ECF No. 15 at 12-13. However, while Dr. Burdge considered Plaintiff moderately limited in the four work activities listed above, Dr. Burdge opined that these moderate limitations would only last nine months with treatment. Tr. 295. Plus, the ALJ translated and incorporated Dr. Burdge's findings into the RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). For instance, the RFC limits Plaintiff to work that has tasks that can be learned in 30 days or less, involves no more than simple work-related decisions and few workplace changes, is limited to occasional and superficial interaction with both the public and co-workers, and

does not involve a highly interactive or interdependent work group, and is in isolation from others, with objects, rather than people. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Moreover, to the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ's decision rationally incorporates Dr. Burdge's findings into the RFC. The Court will not disturb the ALJ's findings. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Based on the record, the ALJ's decision to assign greater weight to Dr. Burdge's opinion is supported by substantial evidence and the RFC is consistent with affording the opinion greater weight.

### 3. Mr. Conley

Mental health therapist Derrick Conley first treated Plaintiff on December 16, 2013, in response to her suicide attempt that day. Tr. 496-98. Mr. Conley opined that Plaintiff had cluster B traits, was orientated to place and person, and was able to track the discussion. Tr. 496-98. Mr. Conley then treated Plaintiff on December 26, 2013, and diagnosed her with depressive disorder and amphetamine dependence with sustained full remission. Tr. 489. Mr. Conley conducted an

Initial Assessment on February 25, 2014, Tr. 459-63, and developed a treatment plan. Tr. 464-66. Then he, or fellow therapist Debra Dove, met with Plaintiff generally on a weekly basis from March to May 2014 and then monthly until treatment ended in January 2015. *See, e.g.*, Tr. 484, 481, 479, 476, 471, 468, 563, 561, 556, 550, 543, 534, 526, 630. On December 26, 2014, Therapist Conley prepared a Mental Source Statement for purposes of Plaintiff's social-security application, opining that Plaintiff was:

- moderately limited in sixteen of the listed mental-activity abilities, including: remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and work in coordination with or proximity to others without being distracted by them; and

- markedly limited in six mental-activity abilities: interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without

distracting them or exhibiting behavioral extremes; maintain socially

appropriate behavior and adhere to basic standards of neatness and

cleanliness; and maintain social functioning.

Tr. 565-68. Based on these mental-ability limitations, Mr. Conley opined that

Plaintiff would be off-task 21-30 percent of the work week and would miss three

days of work per month. Tr. 567.

The ALJ discounted Mr. Conley's December 26, 2014 opinion. Tr. 30. To

discount Mr. Conley's opinion, the ALJ was required to provide germane reasons

for doing so. *See Dodrill*, 12 F.3d at 919.

First, the ALJ recognized that Mr. Conley, a mental health therapist, was not

an acceptable medical source under the applicable social-security regulations. The

ALJ is correct that his opinion is entitled to less weight than that of an acceptable

medical source. 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez*, 74 F.3d at 970-

71. However, his credentials are not a germane reason for rejecting the opinion

because ALJs are directed to consider medical evidence from all sources. 20

C.F.R. §§ 404.1513(e)(2), 416.913(e)(2) (2013). Here, the ALJ indicated that he

was giving more weight to Dr. Burdge, who is a more qualified medical source

regarding mental health limitations.

Second, the ALJ determined that Mr. Conley's December 2014 opinion was

inconsistent with the opinions of other, more qualified medical sources in the

record.  Tr. 30.  Here, the ALJ gave great weight to the opinion of Dr. Burdge and partial weight to the opinions of the State-agency medical consultants Bruce Eather, Ph.D., and James Bailey, Ph.D.—opinions which were contrary to Mr. Conley's December 2014 opinion.  Tr. 29-31; *see* Tr. 292-95 (Dr. Burdge's opined temporary limitations are discussed above); Tr. 70-91 (Dr. Eather opined that Plaintiff was moderately limited in maintaining social functioning, concentration, attention, and pace, but could work with a limited number of coworkers and supervisors.); Tr. 98-123 (Dr. Bailey opined similarly to Dr. Eather.).  Each of these acceptable medical sources opined that Plaintiff did not suffer from a mental impairment, which if treated, substantially restricted Plaintiff's ability to work for a continuous twelve-month period or longer.  While the length of time that a provider treated the claimant is a factor for the ALJ to consider, and here Mr. Conley treated Plaintiff for a longer period than these medical sources, Mr. Conley is considered an "other source" for which the ALJ must only provide a germane reason for discrediting his opinion.  Because Mr. Conley's opinion was inconsistent with the opinions of Dr. Burdge, Dr. Eather, and Dr. Bailey, the ALJ had a germane reason supported by substantial evidence to discount Mr. Conley's opinion.

Third, the ALJ discounted Mr. Conley's opinion because it was inconsistent with his own office notes.  Tr. 30.  An ALJ may reject opinions that are internally

inconsistent or not supported by that source's data. *Nguyen*, 100 F.3d at 1464;

*Tommasetti*, 533 F.3d at 1041. Because Mr. Conley conducted therapy sessions

for Plaintiff—a woman suffering from a depressive disorder and a personality

disorder with borderline, antisocial, and paranoid features—for about a year, it is

not surprising that Mr. Conley's notes reflect the varying effectiveness of the

prescribed antidepressants and varying moods and self-control with which Plaintiff

presented during the treatment. *See, e.g.*, Tr. 476 (discussing problem with

controlling anger at a store in March 2014); Tr. 561 (showing willingness to work

on self-control in June 2014); Tr. 527 (exercising self-control in November 2014);

Tr. 474, 543, 556, 621 (noting positive mood and affect); Tr. 468, 471, 479, 484,

561, 563, 564 (showing anger and/or anxious affect and mood); Tr. 534

(expressing belief that medications were helping with mood); Tr. 521 (having

difficulty sleeping and increased irritability). Yet, during her last sessions with Mr.

Conley, Plaintiff generally presented well and relayed exercising self-control. Tr.

526-27, 623, 631.

While a different interpretation could be reached as to whether Mr. Conley's

opinion is inconsistent with his office notes, the ALJ's determination is a rational

interpretation supported by substantial evidence. *See Tommasetti*, 533 F.3d at

1038 ("[W]hen the evidence is susceptible to more than one rational interpretation"

the court upholds the ALJ's decision.).  The ALJ provided germane reasons for discounting Mr. Conley's December 2014 opinion.

### 4. Carol Gilliom, LICSW

On August 11, 2015, licensed clinical social worker Carol Gilliom conducted an initial assessment of Plaintiff for treatment purposes.  Tr. 594-99.  At the intake, Plaintiff reported that she "wants DSHS to realize I'm insane.  I want to let them know that I'm still unable to work."  Tr. 595.  Based on Plaintiff's self-reports, Ms. Gilliom diagnosed Plaintiff with post-traumatic stress disorder; major depressive disorder, recurrent, moderate; probable antisocial personality disorder; and borderline personality disorder traits.  Tr. 598, 691.  In assessing Plaintiff's medical necessity for treatment, Ms. Gilliom concluded that without treatment Plaintiff's mental health would continue to "increase in frequency and intensity, continuing to interfere with work performance, family and social relationships, and day to day functioning."  Tr. 598.  The next day, Ms. Gilliom spoke with Plaintiff and Plaintiff again reiterated that she wanted Ms. Gilliom to report to DSHS that she is insane and cannot work, and Plaintiff further indicated she did not want therapy, but would if she had to.  Tr. 594.

The ALJ did not discuss Ms. Gilliom's initial assessment in his decision. Treatment notes, in general, do not constitute medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from acceptable

medical sources that reflect judgments about the nature and severity of your

impairment(s), including your symptoms, diagnosis and prognosis, what you can

still do despite impairment(s), and your physical or mental restrictions.").  The

Ninth Circuit has found no error in ALJ decisions that do not weigh statements

within medical records when those records do not reflect physical or mental

limitations or otherwise provide information about the ability to work.  *See, e.g.*,

*Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing

when a physician's report did not assign any specific limitations or opinions

regarding the claimant's ability to work, "the ALJ did not need to provide 'clear

and convincing reasons' for rejecting [the] report because the ALJ did not reject

any of [the report's] conclusions"); *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

1985) (The "mere diagnosis of an impairment ... is not sufficient to sustain a

finding of disability.").  Ms. Gilliom's initial assessment did not include a

functional assessment of Plaintiff's abilities, therefore it need not have been relied

on by the ALJ to support specific limitations in the Plaintiff's RFC.  Moreover,

because Ms. Gilliam's findings in her initial assessment were contradicted by the

opinions of Dr. Burdge, Dr. Eather, and Dr. Bailey, any functional-limitation

opinion that she may have offered in her initial assessment had no effect on the

outcome of the case.  *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2)

(recommending that the ALJ explain the weight given to opinions from other

sources if such evidence has an "effect on the outcome of the case"). The ALJ's omission of Ms. Gilliom's initial assessment does not constitute legal error.

**B. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ improperly evaluated her symptom claims. ECF No. 15 at 13-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective pain or symptoms.[3] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

---

[3] The regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom complaints are being discounted and what evidence undermines these complaints. *Id.* (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In evaluating Plaintiff's symptom complaints, the ALJ may consider, among other items, (1) her reputation for truthfulness; (2) inconsistencies in her testimony or between her testimony and her conduct; (3) her daily living activities; (4) her work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of her condition. *See Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided several specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible. Tr. 25-29.

### 1. Lack of Objective Medical Evidence

The ALJ found that the objective medical evidence and clinical signs were inconsistent with the alleged severity of Plaintiff's physical impairments. Tr. 27. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680. Here, the ALJ noted that imaging of Plaintiff's lumbar spine in February 2013 was normal. Tr. 328. And in October 2015, imaging of Plaintiff's spine showed only mild kyphotic angulation of the cervical spine, which was presumed positional. Tr. 813. The ALJ reasonably concluded that the medical record did not support the severity of Plaintiff's symptom complaints.

ORDER - 27

### 2. Daily Activities

The ALJ found Plaintiff's symptom claims inconsistent with her daily activities. Tr. 26, 29. A claimant's reported daily activities can be evaluated for consistency with reported symptoms. *Orn,* 495 F.3d at 639. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in . . . activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (quotation marks and citations omitted). The ALJ noted that, while Plaintiff complained of a bad back and the ability to walk only twenty steps, there was evidence that she went on regular walks, Tr. 509-10; hiked 7.5 miles after getting stranded and only reported mild pelvic pain afterwards, Tr. 311; injured herself while dancing, Tr. 311-13; cared part-time for her young son, including helping him with homework, Tr. 338-39, 435, 505, 717; and performed household and yard chores, Tr. 245, 334. Tr. 26, 29. Engaging in these activities is inconsistent with Plaintiff's disabling claims. This was a specific, clear, and convincing reason to discount Plaintiff's symptom claims.

### 3. Exaggeration

The ALJ discounted Plaintiff's symptom claims because she exaggerated her symptoms to medical evaluators. Tr. 26, 29. The tendency to exaggerate provides a permissible reason to discount a claimant's symptom claims. *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (The ALJ appropriately considered claimant's tendency to exaggerate when assessing claimant's symptom claims, which was shown in a doctor's observation that claimant was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.). As the ALJ noted, Dr. Burdge found that Plaintiff overtly exaggerated her symptoms and portrayed herself in a consistently negative or pathological manner. Tr. 26 (citing Tr. 293). Because both Dr. Burdge and Dr. Morley found that Plaintiff exaggerated her symptoms, Tr. 293, 301, the ALJ properly considered this evidence when discounting Plaintiff's symptom claims and this finding is supported by substantial evidence.

### 4. Failure to Follow Treatment Recommendations

The ALJ discounted Plaintiff's reported mental-health symptoms because she did not follow recommended treatment. Tr. 26-29. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. Evidence of self-limitation and lack of motivation by a claimant are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment).

When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating failure to participate in treatment. *Nguyen*, 100 F.3d at 1465.

Plaintiff participated in counseling sessions with a handful of providers. *See, e.g.*, Tr. 484-90, 516-19, 526-27, 534-36 (Conley); Tr. 257, 470, 474-75 (Dove); Tr. 669-90 (Dunn); Tr. 504-06 (drug dependency counselor). The record reflects Plaintiff's willingness to participate, to some extent, in therapy and take prescribed medications, even when the providers changed her medication. *See, e.g.*, Tr. 528, 530-32, 536, 539, 541, 552, 569, 575, 627, 636, 698, 700. But the record also reflects that Plaintiff showed an unwillingness—or a hesitancy—to engage in the recommended therapy and take prescribed medication. *See, e.g.*, Tr. 484 (expressing unwillingness to participate in DBT); Tr. 545 (admitting she was not taking prescribed medications but then agreed to take a different type of antidepressant); Tr. 573 (expressing desire to stop therapy because she could not have same time slot weekly but then continuing with treatment); Tr. 686 (noting

that Plaintiff was struggling to stay committed due to a lack of standing appointment and unwillingness to participate in DBT); Tr. 709 (reporting that she had not read the paper work about anger-management skills). Because of Plaintiff's unwillingness to discuss past trauma, Mr. Conley ceased therapy in January 2015, encouraging Plaintiff to continue her therapy when she was ready to discuss trauma. Tr. 550, 613, 623, 631-35, 818. After ceasing her therapy with Mr. Conley, Plaintiff did not resume therapy until August 2015 when she was advised—in response to her comment that she did not want to participate in therapy—that a failure to participate in therapy may impact her ability to obtain assistance. Tr. 594.

The ALJ specifically concluded that Plaintiff was difficult and creating roadblocks to treatment, which undermined her credibility. Tr. 28-29. For example, the ALJ noted that she demanded regularly scheduled appointments. *See, e.g.*, Tr. 572, 686. In addition, the ALJ noted that Plaintiff stated she did not want therapy and she was only doing therapy because she had to for DSHS benefits. Tr. 28 (citing Tr. 594 (At intake appointment, Plaintiff said she wanted provider to tell DSHS that she was insane and cannot work, did not want therapy, and would only do therapy if she had to.)). *See Fair*, 885 F.2d at 603 (An "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can cast doubt on a claimant's sincerity.").

ORDER - 31

Moreover, the ALJ noted that Plaintiff discounted the value of physical therapy. Tr. 29. The medical record indicates she appeared for only five of nine scheduled visits and then discontinued treatment. Tr. 644-45. The ALJ further noted that it was recommended that Plaintiff complete an anger management course, which the record does not indicate she completed. Tr. 28 (citing Tr. 500).

The ALJ was presented with conflicting therapy notes and other evidence in regard to Plaintiff's participation in treatment. The ALJ's interpretation of the record—that Plaintiff was not motivated to participate in in treatment, she failed to fully participate in treatment, and that this failure was not the result of her mental health condition but rather a deliberate choice—is a rational interpretation. The ALJ's conclusion is entitled to deference. *See Orn,* 495 F.3d at 632 (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)); *see also Burch,* 400 F.3d at 679 (noting "[w]here evidence is susceptible to more than one rational interpretation," the ALJ's conclusion will be upheld). This was a specific, clear, and convincing reason to discount Plaintiff's symptom claims.

### 5. *Effective Treatment*

The ALJ discounted Plaintiff's symptom claims because her mental health improved with medication and therapy. Tr. 27. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v.*

ORDER - 32

*Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (recognizing that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040 (A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.). During her therapy and medication management with Mr. Conley in 2014, Plaintiff's mental health showed improvement. *See, e.g.*, Tr. 561 (showing increased ability to maintain self-control); Tr. 527 (exercising self-control); Tr. 534 (On October 28, 2014, Plaintiff reports she has seen improvements due to her medication changes.); Tr. 532 (On October 31, 2014, Plaintiff reports she is sleeping well and her mood is improving.); Tr. 528, 530 (On November 14, 2014, Plaintiff reported improvement in symptoms, sleeping well, and improved relationship with mother.). However, when Plaintiff declined to implement the skills learned during CBT therapy and was unwilling to discuss trauma, her sessions with Mr. Conley were terminated. Plaintiff was without therapy from about January 2015 to September 2015, when she reported "having a 'crazy anxious day' and that she is currently having a really difficult time managing her anxiety due to lots of stressors that she can't control." Tr. 585. In October 2015, after a couple of sessions with Mr. Dunn, Plaintiff "reported that she was doing alright, that she'd had some ups

and downs, and has practiced belly breathing several times with some success to help her clam down."  Tr. 579.

The ALJ's decision that Plaintiff's mental health improved when she received consistent therapy, along with medication management, is a rational interpretation of the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision.).  This was a clear and convincing reason supported by substantial evidence to discount Plaintiff's symptom claims.

*6. Inconsistent Statements*

The ALJ found that Plaintiff made a number of inconsistent statements about her drug use, whether her mental-health conditions were treatable, her physical conditions, and the reason she was discharged from her last employment.  Tr. 25-29.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances.  *Smolen v. Chate*r, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas*, 278 F.3d at 958-59.

The ALJ's decision to discount Plaintiff's symptom claims because of inconsistencies in statements about prior drug use is not supported by substantial evidence. The record cited by the ALJ, Tr. 222, 243, 256, 259, 267-68, does not contain a statement by Plaintiff that she does not use marijuana. The only statement by Plaintiff in the record that she does not use drugs must be read in its context. Tr. 279-80. On a form in July 2014, Plaintiff stated when discussing her methamphetamine use and treatment: "Went to jail for felony drug [meth] possession in 2011 and am now a felon. I went to treatment after jail and am not using now." *Id.* This non-use statement is referring to methamphetamine. The therapy notes and other medical records reflect that Plaintiff routinely disclosed her past methamphetamine use, her methamphetamine relapse in February 2014, and her continued marijuana use. Tr. 339, 345, 435, 500-02, 552, 558, 596, 717, 789, 806. The ALJ's finding that Plaintiff made inconsistent statements as to her drug use is not supported by substantial evidence.

The ALJ also found Plaintiff's physical symptom claims inconsistent with the medical evidence and clinical signs. Tr. 27-28. The medical imaging and records relating to Plaintiff's spine and back do not support her claims of being unable to work due to continuous pain in her back, legs, and hips. *Compare* Tr. 280 *with* Tr. 318, 328, 813. The ALJ's finding is supported by substantial evidence.

The ALJ's finding that Plaintiff offered inconsistent statements as to whether her condition was treatable is also supported by substantial evidence. Plaintiff's initial statements during the administrative hearing in regard to her treatment were consistent with Mr. Conley's noted concern that Plaintiff should not participate in DBT therapy because Plaintiff may utilize the skills learned during DBT against other people given her anti-social personality disorder. *See* Tr. 53-56; *see also* Tr. 479, 550. However, contrary to Plaintiff's statement that her providers believed she was "untreatable," the providers opined that Plaintiff needed to discuss the trauma in her life and implement the CBT skills in order to continue her treatment. Tr. 550-515, 574, 623, 631-35, 818. Treatment was stopped not because it was ineffective but because Plaintiff was unwilling to discuss trauma—the next step needed in her treatment. The ALJ's finding that Plaintiff's statements about the treatability of her mental-health conditions were inconsistent with the record is a rational interpretation of the record that is supported by substantial evidence. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court upholds the ALJ's decision.).

The ALJ also discredited Plaintiff's testimony that she was discharged from her prior employment as a motel night auditor for using vulgar language when she broke up a knife fight in the lobby. Tr. 29. Because Plaintiff had previously

identified that she was discharged "for being late and I was in a fight," Tr. 223, the ALJ's finding is supported by substantial evidence.

Any error made by the ALJ when assessing Plaintiff's symptom claims is harmless because the ALJ identified numerous specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

///

///

ORDER - 37

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

3. JUDGMENT is to be entered in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

DATED September 19, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE